# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MURPHY, | )     Case No. CV 09-8640-JEM |
|                   Plaintiff, | ) |
|     v. | )     MEMORANDUM OPINION AND ORDER |
| | )     REVERSING DECISION OF THE |
| MICHAEL J. ASTRUE, | )     COMMISSIONER OF SOCIAL SECURITY |
| Commissioner of Social Security, | )     AND REMANDING FOR FURTHER |
| | )     PROCEEDINGS |
|                   Defendant. | ) |

## PROCEEDINGS

On December 2, 2009, Victor Murphy ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on April 19, 2010. On July 20, 2010, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and the case remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff is a 48 year old male who was found to have the medically determinable severe combination of impairments of uncontrolled diabetes mellitus with foot ulcer, dysthymic disorder, polysubstance abuse in remission, and antisocial personality disorder. (AR 14.)  Plaintiff has not engaged in substantial gainful activity since June 26, 2007, the application date.  (AR 14.)

Plaintiff's claim for SSI benefits was denied initially on November 16, 2007, and on reconsideration on March 12, 2008.  (AR 9.)  Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Robert Evans on June 2, 2009, in Palmdale, California.  (AR 9.)  Claimant did not appear but his attorney Bill Latour did.  (AR 9.)  Ruth A. Arnush, a vocational expert, appeared and testified.  (AR 9.)

The ALJ issued an unfavorable decision on August 24, 2009.  (AR 9-15.)  Plaintiff filed a Request for Review of Hearing Decision which the Appeals Council denied on September 25, 2009.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal:

1.  Whether the ALJ properly relied upon the vocational expert's testimony in determining that Plaintiff could perform other work.

2.  Whether the ALJ properly considered the psychiatric consultative examiner's opinion regarding the claimant's limited ability to carry out instructions.

2.  Whether the ALJ properly considered lay witness testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla'. . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.

3

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## PLAINTIFF'S IMPAIRMENTS
## AND THE ALJ DECISION

Plaintiff has diabetes mellitus.  (AR 11, 217.)  He stepped on a toothpick and developed a left heel ulcer.  (AR 11, 217.)  Consulting internist Dr. Barry Gordon Gwartz concluded that Claimant is limited to sedentary work with the aid of a cane and no pushing/pulling of the left foot.  (AR 12, 217.)

_____

[1]  Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1    Plaintiff has a long history of drugs, violence and criminal behavior, with over 100
2    arrests.  (AR 12, 207.)  He has been in prison or mental hospitals most of his adult life.  (AR
3    225.)  Found incompetent to stand trial, Plaintiff has been in Patton State Hospital and
4    Atascadero State Hospital for suicidal ideation and psychosis and for being too violent.  (AR
5    208, 237, 243.)  He has been diagnosed with schizoaffective disorder, dysthymic disorder
6    (long term depressive adjustment related to child abuse), polysubstance abuse, and
7    antisocial personality disorder.  (AR 161, 211, 230, 232, 293.)
8    Plaintiff takes or has taken insulin, benazepril, simvastain, Rifamprin, vancomycin,
9    mirtazepine, benzotropine, Risperdal, and Efflexon.  (AR 152, 186, 208, 308.)
10    The ALJ determined that Plaintiff's severe mental and physical impairments did not
11    meet or equal a listing.  (AR 14.)  The ALJ assessed Plaintiff's RFC as follows:

12         The undersigned finds that the claimant has the residual functional capacity
13         to perform sedentary work as defined in 20 CFR 416.967(a) with the aid of
14         a cane for support, no pushing/pulling with the left foot, no kneeling or
15         climbing and with avoidance of working at unprotected heights or around
16         dangerous moving machinery.  He also has mild restriction of activities of
17         daily living, mild difficulties maintaining social functioning, mild difficulties in
18         maintaining  concentration,  persistence  or  pace  with  no  episodes  of
19         decompensation, each of extended duration.  Accordingly, he can perform
20         simple repetitive tasks with minimal social and public contact.
21    (AR 14.)

22    Plaintiff has no relevant vocational background and thus no past relevant work.  (AR
23    13, 14.)  The ALJ, however, concluded at step five of the sequential process that Claimant
24    could perform jobs in the national economy such as small products assembler and
25    lampshade assembler.  (AR 13, 15.)  Hence, the ALJ determined that the Claimant is not
26    disabled within the meaning of the Social Security Act.  (AR 15.)

27

28

**DISCUSSION**

1

2      The ALJ decision must be reversed.  The ALJ did not inquire of the vocational expert

3  ("VE") whether there were any conflicts between the VE'S testimony and the Dictionary of

4  Occupational Titles ("DICOT"), or obtain a reasonable explanation of those conflicts, of which

5  there were several.  The ALJ also improperly rejected the consulting psychologist's opinion

6  that Claimant could perform only Reasoning Level one jobs that would preclude the jobs

7  specified by the ALJ.  Thus, the ALJ's step five determination is unsupported by substantial

8  evidence and not free of legal error.

9  **I.     THE ALJ ERRED IN NOT INQUIRING AND/OR OBTAINING
           A REASONABLE EXPLANATION FROM THE VE OF CONFLICTS**
10  **BETWEEN HER TESTIMONY AND DICOT**

11      The ALJ's RFC was limited to less than sedentary work.  (AR 13, 14.)  The job of

12  small products assembler, however, is light work, which is inconsistent with the ALJ's RFC.

13  DICOT 739.687-030; 1991 WL 680180 (G.P.O.).  The ALJ was obliged to inquire of the VE

14  whether there were any variances in her testimony with DICOT job requirements and to

15  obtain a reasonable explanation for such variances.

16      DICOT raises a presumption as to job classification requirements.  Johnson v.

17  Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may accept vocational expert testimony

18  that varies from the DICOT but the record must contain "persuasive evidence to support the

19  deviation."  Id.  The ALJ has an affirmative responsibility to ask whether a conflict exists

20  between a VE's testimony and the DICOT.  SSR 00-4p, 2000 WL 189704 *4 (S.S.A.);

21  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is a conflict, the ALJ must

22  obtain a reasonable explanation for the conflict and then must decide whether to rely on the

23  VE or DICOT.  Id.  Failure to do so, however, can be harmless error where there is no actual

24  conflict or the VE provides sufficient support to justify a variation from DICOT.  Id. at 1154

25  n.19.

26      In this case, the ALJ did not expressly inquire of the VE whether there were any

27  conflicts between her testimony and DICOT, and failed to obtain a reasonable explanation for

28

1 │ variances that would constitute "persuasive evidence."  The entirety of the ALJ's colloquy

2 │ with the VE at the hearing is as follows:

3 │     Q.    And this person had no work history.  He would be limited as

4 │            follows.  He could do light work to the extent of lifting, but not

5 │            standing or walking.  He could only do those things for two hours in

6 │            an eight-hour period.  He could sit for six.  If he's going to do any

7 │            ambulation at all, he would need a cane.  He would be limited in his

8 │            left lower extremity with respect to pushing and pulling.  He could

9 │            probably only do so occasionally.  No kneeling, no climbing, no

10 │            unprotected heights, no hazards such as dangerous machinery,

11 │            swimming pools, that sort of thing.  In addition, he would be able to

12 │            understand and follow only simple repetitive instructions, probably

13 │            should not [*sic*] deal with the public, and probably should not work

14 │            with close co-workers.  Would there, in your opinion, be either light

15 │            or sedentary work for such an individual?

16 │     A.    Yes, I could find light and sedentary.  At the light level, this

17 │            hypothetical person could do a job such as a small products

18 │            assembler, DOT number is 739.687.030.  Light and unskilled SVP

19 │            2, regional numbers are 5,400 and the national numbers 68 –

20 │            680,000.  Did you want an example of the sedentary level?

21 │     Q.    Please, but before I do that, do these numbers reflect the inability

22 │            to  stand more than two hours?  I assume this would be a stool or

23 │            alternative type of - -

24 │     A.    Yeah, many assembly jobs give you that option, or sitting is one of

25 │            the primary requirements, you work at a table, but you might be

26 │            lifting items that weigh more than ten pounds.

27 │     Q.    Okay.

28 │     A.    That would account for the light duty.

| | | |
|---|---|---|
| 1 | Q. | Like a bench assembly. |
| 2 | A. | Yes.  Exactly. |
| 3 | Q. | Sitting down six hours or more? |
| 4 | A. | Yes. |
| 5 | Q. | Got it.  Okay, and that is a sedentary job? |
| 6 | A. | Sedentary job, lamp shade assembler, which fits the hypothetical |
| 7 | | profile.  The DOT number is 739.684.094.  It is sedentary and |
| 8 | | unskilled.  SVP 2, regional numbers are 1,400 and the national |
| 9 | | numbers are 107,000. |

10   (AR 20-22.)

11         Plaintiff contends the ALJ did not inquire of the VE whether a conflict existed with

12   DICOT regarding Plaintiff's two hour stand/walk limitation in his RFC.  Sedentary work

13   involves sitting most of the time; walking and standing are required only occasionally.

14   DICOT App. C, 1991 WL 688702 (G.P.O.).  Light work can require walking and standing to a

15   significant degree.  Id.

16         Contrary to Plaintiff's assertion, the ALJ did ask whether the job numbers of a small

17   products assembler would reflect the inability to stand for more than two hours.  (AR 21.)

18   There is no requirement for the ALJ to use any "magic words."  See, e.g. Magallanes v.

19   Bowen, 881 F.2d 745, 755 (9th Cir. 1989).  The ALJ's question was sufficient to satisfy his

20   affirmative responsibility to inquire, at least as to the standing limitation for the small products

21   assembler job.  The VE responded by saying that "many" assembly jobs provide that option.

22   (AR 21.)

23         The VE, however, never indicated the extent to which the stand limitation eroded the

24   job base for the small products assembler position.  The ALJ never inquired further.  The ALJ

25   never inquired at all about the walking limitation.  These oversights perhaps would be

26   harmless but the ALJ also failed to inquire or obtain any explanation for other variances

27   between the VE's testimony and DICOT as it relates to the small products assembler job.

28

The small products assembler job is rated light work when it requires sitting most of the time but it entails pushing/pulling of arm or leg controls.  DICOT 739.687-030; 1991 WL 680180 (G.P.O.).  The ALJ's RFC in this case assesses a limitation of "no pushing/pulling with left foot" because Plaintiff has a diabetic ulcer on his left ankle.  (AR 11-12, 14.)  The ALJ did not inquire of this variance from DICOT or obtain a reasonable explanation of it or discuss the extent of job base erosion that it would cause.  This was error.

The ALJ's hypothetical question was too truncated and ambiguous to fairly encompass this limitation.  The ALJ's only limitation in his hypothetical question to the VE was, "He would be limited in his lower left extremity with respect to pushing and pulling."  (AR 20.)  The DICOT job classification for small products assembler refers to both pushing and/or pulling of arm and leg controls while sitting, and "constant pushing and/or pulling of materials."  DICOT 739/687-030, 1991 WL 680180 (G.P.O.).  The ALJ's limitation in his hypothetical question was too vague and ambiguous and did not specify the type of push/pull limitation applicable.  The failure to clarify the hypothetical to specify a leg control limitation left the VE's testimony "couched in somewhat ambiguous terms."  De Lorme, 924 F.2d at 850.  The VE did not discuss either of the push/pull limitations nor provide any explanation nor specify the job base erosion that would occur.

The Commissioner's only response is that there is no conflict.  He argues that the DICOT description indicates that "Plaintiff would only use hand controls and makes no mention of leg controls."  (JS 12.)  This is plainly incorrect.  The DICOT description classifies the position as light work "when it requires sitting most of the time but entails pushing and/or pulling of arm and leg controls."  DICOT 739.687-030.  The job description involves using hand tools, portable powered tools, bench machines, and machines such as arbor presses, punch presses, taps, spot welders, or riveters to fasten parts together by hand.  Id.  There is nothing in this description that would preclude leg controls or is limited to hand controls.  At best, the issue is ambiguous.  The ALJ's duty was to inquire and to obtain an explanation.  That did not happen here.

1    Plaintiff raises yet another conflict between the VE's testimony and DICOT as it relates
2    to the small products assembler occupation.  Plaintiff's RFC includes a limitation to avoid
3    working around dangerous machinery.  (AR 14.)  Plaintiff contends that the small products
4    assembly position, even though performed while sitting for the most part involves exposure to
5    dangerous machinery.  Plaintiff also contends that the ALJ made no inquiry of the VE about
6    this limitation nor received any explanation of the variance or information on the extent of job
7    base erosion.

8    The Commissioner's response is that, according to the DICOT job description, the
9    activity or condition of "moving mechanical parts" is not present for this occupation.  Yet, as
10   Plaintiff observes, the RFC limitation was as to hazardous machinery, not moving mechanical
11   parts.  The various machines specified in the DICOT job description may be hazardous in the
12   absence of moving parts.  Again, the problem is that the ALJ never inquired and never
13   obtained an explanation for the variance or any indication of the extent of erosion of the job
14   base.

15   The ALJ did inquire of the VE regarding any conflict with DICOT as to Plaintiff's stand
16   limitation, but did not so for the walk, foot control and dangerous machinery limitations, as it
17   relates to the small products assembler position.  The ALJ did not obtain a sufficient
18   explanation for the stand limitation or any explanation for the other limitations or an
19   assessment of the job base erosion for all of these limitations.  The Commissioner bears the
20   burden on the step five determination of work in the national economy.  The Commissioner
21   did not meet his burden in regard to the small products assembler position.[2]

22
23
24
25   _____
26        [2]  The same problem exists in regard to the sedentary lamp shade assembler
     occupation.  The VE indicated that there were only 1400 jobs regionally.  (AR 22.)  The job
27   description may call for work around dangerous machinery, i.e., "may heat seams in press
     to set glue."  DICOT 739.684-094.  The ALJ did not inquire of the VE if there was any
28   conflict with DICOT or obtain any explanation or figures on job base erosion.  The
     Commissioner did not respond to the Plaintiff's argument on this point.

**II.    THE ALJ IMPROPERLY REJECTED THE OPINION
        OF THE CONSULTING EXAMINER**

Consulting examiner Dr. Mark Pierce performed a complete psychological evaluation of the Claimant.  He opined that Plaintiff "retains the mental capacity to complete simple and repetitive-to-somewhat-higher-demand vocational skills and to adapt to minimal changes in a work environment."  (AR 212.)  He also assessed Plaintiff as able to "remember and comply with simple one and two part instructions."  (AR 212.)  The ALJ decision fails to address this latter limitation at all and implicitly rejected it.  This was error.  An examining physician's opinion, if uncontradicted, cannot be rejected without clear and convincing evidence and, even if contradicted, can be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

Both the small products and the lamp shade assembler occupations are Reasoning Level 2 jobs under DICOT's General Education Development ("GED") criteria.  DICOT App. C.  Level 2 requires a person to "[a]pply commonsense understanding to carry out detailed but involved written or oral instructions."  By contrast, Reasoning Level 1 requires a person to "[a]pply commonsense understanding to carry out simple one-or two-step instructions."  Plainly, both of the jobs specified by the VE would be precluded by a limitation to one and two step instructions.

The ALJ decision fully describes Dr. Pierce's evaluation but unaccountably omits any reference to Dr. Pierce's limitation to simple one or two step instructions.  The ALJ gives no reasons at all for rejecting it.  His question to the VE included only a limitation to simple, repetitive instructions, also a limitation assessed by Dr. Pierce.  (AR 212.)  The ALJ implicitly rejected Dr. Pierce's simple one and two step instruction limitation.

The Commissioner, like the ALJ, attempts to take refuge in the "simple, repetitive tasks" limitation, noting that numerous cases have held that such a limitation is consistent with both Reasoning Level 2 and Reasoning Level 1 jobs.  Chavez v. Astrue, 2009 WL 5172857, *7 n.10 (C.D. Cal. 2009); Squier v. Astrue, 2008 WL 2537129, *5 (C.D. Cal. 2008).  This argument, however, is not responsive to Dr. Pierce's other limitation to one and two step

1  instructions.  The ALJ was duty bound to provide specific and legitimate reasons for rejecting
2  it.  He failed to do so, or provide any reasons at all.  This was error.

3         The Commissioner's legal authority is inapposite for similar reasons.  In <u>Stubbs-</u>
4  <u>Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008), the issue was whether "simple,
5  routine, repetitive tasks" captured the claimant's deficiencies in concentration, persistence or
6  pace.  It never discussed the ability to perform one or two step instructions.  Likewise, <u>Meissl</u>
7  <u>v. Barnhart</u>, 403 F. Supp. 2d 981, 982-84 (C.D. Cal. 2005), addressed whether "simple
8  repetitive tasks" was in conflict with Reasoning Level two occupations.  It did not present a
9  limitation to one and two step instructions as the case here.

10        The Commissioner asserts that Dr. Pierce's general limitation was broader than
11  simple repetitive tasks.  Dr. Pierce did say Plaintiff had the mental capacity "to complete
12  simple and repetitive-to-somewhat-higher-demand vocational skills," but he also limited him
13  to one or two step instructions.  (AR 212.)  The latter limitation was not discussed by the ALJ
14  or included in his hypothetical question to the VE.  It was an opinion that the ALJ was obliged
15  to address.  At best, Dr. Pierce's opinion was ambiguous and/or internally inconsistent which
16  it was the ALJ's duty to resolve.[3]

17

18

19  _____

20        [3]  In Social Security cases, the ALJ has a special, independent duty to develop the
21  record fully and fairly and to assure that the claimant's interests are considered.
    <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001); <u>Smolen</u>, 80 F.3d 1273, 1288
22  (9th Cir. 1996).  <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ has a basic
    duty to inform himself about facts relevant to his decision.  <u>Heckler v. Campbell</u>, 461 U.S.
23  458, 471 n.1 (1983) (Brennan, J., concurring).  The ALJ's duty to develop the record exists
    even when the claimant is represented by counsel or the claimant is mentally ill.
24  <u>Tonapetyan</u>, 242 F.3d at 1150.

25        Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow
26  for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate
    inquiry.  <u>Smolen</u>, 80 F.3d at 1288; <u>Tonapetyan</u>, 242 F.3d at 1150.  The ALJ may discharge
27  this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing
    the hearing or keeping the record open after the hearing to allow supplementation of the
28  record.  <u>Smolen</u>, 80 F.3d at 1288; <u>Tonapetyan</u>, 242 F.3d at 1150.

1    The ALJ had the burden of proving work in the national economy that Plaintiff could

2  perform.  By failing to address Dr. Pierce's simple one and two step instruction limitation, the

3  ALJ step five determination is not supported by substantial evidence and free of legal error.[4]

4                                                    **ORDER**

5    IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is

6  reversed and that this action is remanded for further proceedings in accordance with this

7  Memorandum Opinion and Order.

8    LET JUDGMENT BE ENTERED ACCORDINGLY.

9

10  DATED: <u>January 13, 2011</u>                              <u>          /s/ John E. McDermott          </u>

11                                                             JOHN E. MCDERMOTT
                                                               UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25    [4]  The Court sees no need to address at this time Plaintiff's third argument that the

26  ALJ erred by not discussing the lay witness testimony of Claimant's mother.  The ALJ plainly
    erred by not discussing it, <u>Robbins v. Soc. Sec. Adm</u>., 466 F.3d 880, 885 (9th Cir. 2006),

27  but the Court finds it difficult to determine if the lay witness testimony would be
    inconsequential to the ultimate disability determination in view of the Court's other rulings.

28  Hence, the issue is preserved.